SCHROEDER, Chief Judge:
This is an interlocutory appeal by criminal defendants challenging a requirement that pretrial detainees making their first appearance before a magistrate judge wear leg shackles. The district-wide shackling policy was implemented by the United States Marshals Service for the Central District of California after consultation with the magistrate judges. In each of these seventeen cases, the magistrate judge denied the Federal Public Defender’s motion for the defendant to appear without shackles at the initial appearance. The district court reviewed these adverse magistrate judges’ rulings in a consolidated appeal. The district court, citing general safety concerns, affirmed the magistrate judges’ shackling decisions. The record contains no documentation or explanation of specific problems that led up to the enactment of the shackling policy.
Before reaching the merits of the case, we must deal with appellate jurisdictional obstacles raised by the government. These are questions of mootness and appellate jurisdiction over interlocutory orders. We conclude that the case is not moot because the issues are capable of repetition and will otherwise evade review, and that we have appellate jurisdiction to review the orders that finally dispose of issues collateral to the merits of the cases.
On the merits, because it is undisputed that the policy effectuates a diminution of the liberty of pretrial detainees and distracts from the dignity and the decorum of a critical stage of a criminal prosecution, we conclude that the shackling policy requires adequate justification of its necessity. On the basis of the limited record before us, we conclude we must vacate the district court’s order upholding the policy, but we do not preclude the reinstatement of a similar policy upon a reasoned determination that it is justified on the basis of past experiences or present circumstances in the Central District.
BACKGROUND
Defendants appeal the denial of their motions to appear unshackled before vari *847 ous magistrate judges of the Central District of California during defendants’ initial appearances. As part of the policy of the United States Marshals Service for the Central District of California, in-custody defendants are shackled in leg restraints for their initial appearances in front of magistrate judges. According to the district court, magistrate judges at the initial appearance read defendants their rights, confirm that defendants have received a copy of the complaint or indictment stating the charges against them, appoint counsel to represent the indigent defendants, set dates for preliminary hearings and post-indictment arraignment, and make preliminary determinations of bond and detention issues. In some cases, the initial appearance includes an evidentiary detention hearing with testimony by lay witnesses or law enforcement officers.
The record contains little evidence about the history of the shackling policy. The policy was enacted in April of 2003 by the United States Marshals Service for the Central District of California. The record indicates that the Marshals Service consulted with the magistrate judges before enacting the policy, although it is not clear to what extent. The record also indicates that, historically, defendants in the district generally were not shackled at initial appearances, although there appears to have been at least some period in the past when defendants were both shackled and handcuffed at initial appearances.
There is little in the record to explain why this policy was adopted. The record does not indicate whether any other district in this or other circuits has a similar policy. This record contains the declaration of Robert Masaitis, Chief Deputy United States Marshal for the Central District of California. He states that “it is not possible to conduct an individualized analysis of a defendant at the time of the initial appearance,” and further states that the shackling policy is necessary to ensure safety and order in the courtroom. He also states that the need for full restraints is enhanced by the current staffing shortages in the Marshals Service. The declaration does not discuss any more specific security problems that the policy was intended to address, or any incidents that preceded the enactment of the policy.
We also have a memorandum from Adam N. Torres, United States Marshal for the Central District of California, to the district court judges detailing an incident in one district court judge’s courtroom in June of 2003. That incident did not relate to a first appearance, but involved conduct of a defendant who was restrained during the reading of his jury verdict of conviction after he verbally attacked Assistant United States Attorneys and an FBI Agent.
In each of these consolidated cases, the defendant was represented by the Federal Public Defender and made his initial court appearance shackled. The Federal Public Defender moved that the defendant be permitted to appear without shackles. In some cases, the magistrate judges allowed the Federal Public Defender to argue the motion. In no case did the magistrate judge hold an evidentiary hearing on the motion. The magistrate judge denied the motion in each case.
In a consolidated appeal from interlocutory orders, the Federal Public Defender sought district court review of the magistrate judges’ denials of the motions. The district court, without a hearing, affirmed the magistrate judges’ shackling decisions. It noted that shackling may indeed detract from the dignity and decorum of judicial proceedings, but concluded that safety interests outweighed this concern. The district court noted that any other potential problems with shackling could be ad *848 dressed in an individual case, if necessary. Therefore, the district court held that the policy did not deprive the defendants of their due process rights. This consolidated appeal followed.
MOOTNESS
The government argues that this case is moot because no effective relief can be ordered at this stage for these defendants whose criminal pretrial proceedings are over. See Bernhardt v. County of Los Angeles, 279 F.3d 862, 871 (9th Cir.2002). Article III, Section 2 of the Constitution limits federal court jurisdiction to “cases” and “controversies.” This case or controversy requirement exists through all stages of federal judicial proceedings. Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998). A number of doctrines have developed, however, to permit courts to review a case in which it is no longer possible to remedy the particular grievance giving rise to the litigation.
One is the exception to the mootness doctrine for violations “capable of repetition yet evading review.” See, e.g., Gerstein v. Pugh, 420 U.S. 103, 111 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). This is such a case. In Gerstein, the Supreme Court stated that very brief pretrial detention is by nature temporary, because it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is released or convicted. Id. There the Supreme Court held the exception to the mootness doctrine for violations “capable of repetition yet evading review” applied because the constitutional violation was likely to be repeated, but would not last long enough to be reviewed before becoming moot. Id.
An initial proceeding in a criminal case is even more temporary than the pretrial detention at issue in Gerstein. This case evades review for essentially the same reason. The defendants could not have brought the challenges to the shackling by the magistrate judge to the district court, much less to us, before the harm of shackling at the initial proceeding was completed.
This situation giving rise to this challenge also is capable of repetition. We acknowledge that we cannot assume that criminal conduct will be recurring on the part of these defendants. See O’Shea v. Littleton, 414 U.S. 488, 496, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). This case is therefore distinguishable from an abortion case, the classic case capable of repetition yet evading review, because we can assume a woman can become pregnant again. See generally Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). This makes no material difference, however, because a future charge assuredly will be brought against someone, and the shackling policy would similarly escape review.
For this reason, we have held that a case is capable of repetition when the defendants are challenging an ongoing government policy. Oregon Advocacy Cntr. v. Mink, 322 F.3d 1101, 1118 (9th Cir.2003). In Oregon Advocacy Center, the plaintiffs alleged that the state mental hospital, which was charged with evaluating and treating mentally incapacitated defendants, refused to accept the defendants on a timely basis. Id. at 1105-06. The plaintiffs challenged a state policy that results in the delays. Id. at 1118. We held that although the particular situation precipitating a constitutional challenge to a government policy may have become moot, the case does not become moot if the policy is ongoing. Id. “The continued and uncontested existence of the policy that gave rise to [the] legal challenges forecloses [the] mootness argument.” Id.
*849 The D.C. Circuit similarly held that when a complaint challenges an acknowledged government policy, the government cannot prevail by arguing that the controversy became moot when the particular situation at issue resolved itself. Ukrainian-American Bar Ass’n v. Baker, 893 F.2d 1374, 1377 (D.C.Cir.1998). The defendants in this case are challenging an ongoing government policy.
As a practical matter, this case is materially similar to a class action in which the class representative’s claims may become moot, but there are members of the class whose claims are not moot. The Supreme Court has held that under the capable of repetition yet evading review doctrine, the termination of a class representative’s claim does not moot the claims of other class members. See Gerstein, 420 U.S. at 111 n. 11, 95 S.Ct. 854. This holding applies outside of the class action context when the circumstances of the case are analogous to those found in class action cases. Oregon Advocacy Cntr., 322 F.3d at 1117; see also Gerstein, 420 U.S. at 111 n. 11, 95 S.Ct. 854. The defendants in this case are seeking to represent interests broader than their own, and the attorney bringing the case is a Federal Public Defender with other clients with a live interest in the case. See Gerstein, 420 U.S. at 111 n. 11, 95 S.Ct. 854; Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1237 (9th Cir.2001).
The government suggests that this kind of blanket challenge to a procedure used in prosecutions must be brought as a civil class action rather than within the relevant criminal proceedings in which it arose. Our case law does not establish that a civil forum is the exclusive remedy. Indeed, it may be more appropriate to decide this case in the context of actual prosecutions rather than by resort to hypotheticals or generalizations. On a practical level, we must understand that this particular challenge could not be made in the civil context, because the only available attorney to represent these criminal defendants is the Federal Public Defender. The Federal Public Defender cannot pursue a civil class action on their behalf, because there is no provision for the appointment of a Federal Public Defender in a civil action, and the office of Federal Public Defender is barred from instituting any action on its own. See 18 U.S.C. § 3006A(a), Administrative Office of the U.S. Courts, Guide to Judiciary Policies and Procedures, Vol. VII, Ch. IV. This is still another reason why we should not hold that this challenge can proceed as only a civil action.
APPELLATE JURISDICTION
The government contends that we lack appellate jurisdiction because this is not an appeal from a final district court judgment, but from a ruling in consolidated interlocutory appeals. Courts of appeals “shall have jurisdiction of appeals from all final decisions of the district courts of the United States.” 28 U.S.C. § 1291. There is an exception to the final judgment rule for certain interlocutory orders, known as “collateral orders,” where review of a final judgment would be unavailing. This exception applies when the order (1) will conclusively determine the disputed question, (2) will resolve an important issue completely separate from the merits, and (3) is effectively unreviewable on appeal from a final judgment. Coopers & Lybrand v. Livesay, 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Adherence to the rule of finality has been particularly stringent in criminal prosecutions, because the delays and disruptions that come with interlocutory orders can hinder the effective and fair administration of the criminal law. Abney v. United *850 States, 431 U.S. 651, 656, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977).
All of the requirements of the collateral order doctrine apply here. The shackling order conclusively determines the disputed question of whether the shackling policy is permissible. This question is wholly separate from the merits of the underlying action. Therefore, the question before this court is whether the order would be effectively unreviewable if the court delayed the defendants’ appeals until they are either convicted and sentenced, or acquitted. See United States v. Friedman, 366 F.3d 975, 979 (9th Cir.2004). The order must involve “an important right which would be ‘lost, probably irreparably,’ if review had to await final judgment.” Abney, 431 U.S. at 658, 97 S.Ct. 2034.
Even assuming that defendants’ claims could be reviewed on appeal from conviction, their claims could not be reviewed if they are acquitted. See Sell v. United States, 539 U.S. 166, 176-77, 123 S.Ct. 2174, 156 L.Ed.2d 197 (2003); Friedman, 366 F.3d at 979. In most cases, a defendant’s rights would be sufficiently vindicated by an acquittal. See, e.g., Flanagan v. United States, 465 U.S. 259, 265, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984) (acquittal would remedy harm of order disqualifying counsel); United States v. MacDonald, 435 U.S. 850, 859, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978) (acquittal would remedy harm of speedy trial violation). This ease, however, falls within a subset of cases in which acquittal does not undo the harm to the defendant. The Supreme Court has held, for example, that an order to deny bail and require pretrial detention cannot effectively be reviewed on appeal. Stack v. Boyle, 342 U.S. 1, 6, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Similarly, we have held that involuntary commitment of a defendant is effectively unreviewable on appeal, because there would be no appellate review if the defendant was found not competent to stand trial or acquitted. Friedman, 366 F.3d at 979. We find this case to be analogous. An acquittal in this case would favorably terminate the prosecution of the defendant, but would not affect the deprivation of liberty that occurred during the pretrial hearing. See Sell, 539 U.S. at 176-77, 123 S.Ct. 2174; Friedman, 366 F.3d at 979.
Therefore, defendants’ claims are effectively unreviewable on appeal from a final judgment. The district court’s order reviewing the magistrate judges’ determinations is an appealable collateral order.
MERITS
This court has not decided whether a general policy of shackling a defendant for a proceeding in front of a judge violates due process. Nearly all of the litigation concerning shackled defendants arises in the context of proceedings in front of a jury. See, e.g., Deck v. Missouri, — U.S. -, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005) (extending the general prohibition on the use of shackles to the penalty phase of a jury trial); Duckett v. Godinez, 67 F.3d 734 (9th Cir.1995); Jones v. Meyer, 899 F.2d 883 (9th Cir.1990); Spain v. Rushen, 883 F.2d 712 (9th Cir.1989). These cases turn in large part on fear that the jury will be prejudiced by seeing the defendant in shackles. See Deck, 125 S.Ct. at 2013; Duckett, 67 F.3d at 748; see also Illinois v. Allen, 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). Fear of prejudice is not at issue in the present case, as a judge in a pretrial hearing presumably will not be prejudiced by seeing defendants in shackles. Other courts have disagreed about whether shackling a defendant for a proceeding in front of a judge violates due process. Compare United States v. Zuber, 118 F.3d 101, 104 (2d Cir.1997) (finding no due process violation), with People v. Fierro, 1 Cal.4th 173, *851 3 Cal.Rptr.2d 426, 821 P.2d 1302, 1322 (1992) (finding due process violation).
Shackling a defendant in any judicial proceeding can have negative effects. The Supreme Court has stated that “the use of [shackling and restraints] is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold.” Allen, 397 U.S. at 344, 90 S.Ct. 1057; see Deck, 125 S.Ct. at 2013. Moreover, the Supreme Court expressed concern that restraints could greatly reduce the defendant’s ability to communicate with his counsel. Id. This court has noted that shackling may confuse and embarrass the defendant, thereby impairing his mental faculties. See Duckett, 67 F.3d at 747-48, citing Spain, 883 F.2d at 720-21. Shackling may also cause the defendant physical and emotional pain. See Rhoden v. Rowland, 172 F.3d 633, 637 (9th Cir.1999); Spain, 883 F.2d at 720-21.
Defendants contend that the Marshals Service’s shackling policy violates then-due process rights. Before a defendant can be shackled in front of a jury, the court must be persuaded by compelling circumstances that some measure is needed to maintain security, and that no less restrictive alternatives are available. Jones, 899 F.2d at 884-85. Defendants contend that due process requires that there be no restraining whatsoever without an individualized determination.
We observe, without deciding the issue, that this may go farther than due process requires. But we do not have to reach this question. The record here gives no justification or describes any circumstances existing district-wide that would support the district requiring such restraint.
At a minimum, due process requires that before there is any district-wide policy affecting all incarcerated defendants whom the government must transport to a first appearance, there must be some justification. The Supreme Court has stated that “if a restriction or condition is not reasonably related to a legitimate goal- — -if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.” Bell v. Wolfish, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, a pretrial detainee has a substantive due process right against restrictions that amount to punishment.
Cases addressing the substantive due process rights of pretrial detainees typically involve challenges to prison policies. See, e.g., id. Courts ordinarily defer to the expert judgments and professional expertise of corrections officials. Id. at 547-48, 99 S.Ct. 1861. Corrections officials must produce at least some evidence that then-policies are based on legitimate penological justifications. Swift v. Lewis, 901 F.2d 730, 733 (9th Cir.1990).
Restrictions on defendants during judicial proceedings, however, are not within the realm of correctional officials. The conduct of judicial proceedings is the domain of the courts. Preservation of dignity and decorum are necessary for the conduct of judicial proceedings that determine issues of liberty and life.
For this reason this court cannot give the government courtroom policies the same degree of deference that it would give to the government prison policies. A court should insist on some showing that a policy impinging on defendants’ freedoms and ability to communicate, as well as diminishing the decorum of the court proceedings, is reasonably related to a legitimate goal. By requiring the government to establish the need for the policy, the court can ensure that the policy does not *852 constitute punishment of pretrial detainees during judicial proceedings.
In this record, there is no explanation of whether a similar shackling policy exists in any other districts. There is no evidence of specific instances that show a need for this shackling policy in the Central District. Rather, the only support for the policy is the conelusory declaration of a single representative of the Marshals Service that the policy is necessary because of safety concerns and financial limitations.
As we have seen, the record contains no evidence of safety concerns necessitating this policy in this district. There is no basis on which we can assume the benefits of the policy outweigh the costs and the disadvantages. The Supreme Court has already held that financial concerns should not be a justification for cutting back on the constitutional rights of criminal defendants. See Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 392, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992). For example, we have held that a city’s financial crisis does not allow it to maintain overcrowded jails that deprive people of their constitutional rights. Stone v. City and County of San Francisco, 968 F.2d 850, 858 (9th Cir.1992); see also Jones v. Johnson, 781 F.2d 769, 771 (9th Cir.1986). As one commentator has put it, “[ajllowing a governmental entity to plead budgetary constraints allows it to second-guess the Court’s determination of what the law requires and to argue, in essence, that it is exempt from constitutional standards.” See Barbara Kritchevsky, Is there a Cost Defense? Budgetary Constraints as a Defense in Civil Rights Litigation, 35 Rutgers L.J. 483, 560 (2004).
There may well be good reasons for the policy, but we don’t yet know what they are. We therefore reverse the district court’s order affirming the magistrate judges’ shackling decisions. We order the existing shackling policy rescinded, but we do not preclude reinstatement of a similar policy upon a showing of adequate justification. This, at a minimum, means a showing sufficient to support a reasoned determination that the policy is justified on the basis of past experiences or present circumstances in the Central District.
We remand the case to the district court for proceedings consistent with this opinion.
REVERSED AND REMANDED.