# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED." PURSUANT TO THE RULES OF CIVIL PROCEDURE PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C), THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE CITED OR USED AS BINDING PRECEDENT IN ANY OTHER CASE IN ANY COURT OF THIS STATE; HOWEVER, UNPUBLISHED KENTUCKY APPELLATE DECISIONS, RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED DECISION IN THE FILED DOCUMENT AND A COPY OF THE ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE DOCUMENT TO THE COURT AND ALL PARTIES TO THE ACTION.

RENDERED: FEBRUARY 20, 2020
NOT TO BE PUBLISHED
DATE 3/12/20

# $Supreme Court of Kentucky

2019-SC-000033-MR

CLYDE ELLSWORTH CRAWFORD      APPELLANT

V.      ON APPEAL FROM BOONE CIRCUIT COURT
HONORABLE RICHARD BRUEGGEMANN, JUDGE
NO. 17-CR-00489

COMMONWEALTH OF KENTUCKY      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Clyde Ellsworth Crawford appeals as a matter of right from a judgment of the Boone Circuit Court sentencing him to thirty years' imprisonment for one count each of sodomy in the first degree (victim under 12)[1] and sexual abuse in the first degree.[2] Crawford asserts the trial court erred by shackling him during the penalty phase and in admitting what he believes was a largely unintelligible recorded telephone call between himself and the victim. Following a careful review, we affirm.

---

[1] Kentucky Revised Statutes (KRS) 510.070, a Class A felony.

[2] KRS 510.110, a Class D felony.

Abby[3] and her family lived next door to Crawford for several years in Boone County, Kentucky. The families were close, and Abby would often spend time at the Crawford residence. When Abby was six years old, she was in the Crawford's living room watching television. Crawford told her to go into his bedroom and she complied. After telling Abby he was not going to hurt her like a neighbor had done,[4] Crawford put her on the side of the bed, removed her pants, and performed oral sex on her. He told her she "looked good" and "tasted good." On another occasion, while riding in his truck on the way to a local fast food restaurant, Crawford had Abby stroke his penis over his pants while asking her if she wanted to know what an erection felt like. Abby informed no one of these events.

Several years later, while preparing for her upcoming wedding, Abby informed her mother of Crawford's abuse. Believing Crawford was dead, the pair decided nothing would be gained by reporting the incidents. Some time later, Abby's mother and father ran into Crawford, his wife, his son, and his son's family at a restaurant. Upon learning Crawford was still alive, and fearful he could hurt other children, Abby reported the childhood sexual abuse to the Boone County Sheriff's Department.

---

[3] Abby is a pseudonym used in place of the victim's actual name to protect her privacy.

[4] When she was four years old, Abby had been raped and sexually assaulted by a juvenile neighbor. Crawford was aware of the incident.

2

Detective Melody Parker assisted Abby in making a recorded phone call to Crawford. During the forty-five-minute conversation, Crawford apologized for his actions; indicated he had never done anything like that before or since; stated he hoped Abby "had forgotten about that;" expressed his shame; and placed blame on financial stress, alcoholism, and lack of marital sexual relations. He maintained he did not know why he had "done those things" and stated he never considered doing anything until that "other little boy" sexually assaulted Abby. He tried to cast blame on Abby, asserting she had "really wanted to do those things" and had been acting above her age since her previous rape occurred. Crawford intermittently denied having done anything sexual to Abby but would quickly revert to his admissions. Ultimately, he stated it was something he had tried to forget about but he had "no excuse why I did that."

Following the phone call, Detective Parker visited Crawford and asked him to accompany her to the police station to give an interview. Crawford complied. During the recorded interview, Crawford reiterated much of what he had said during his conversation with Abby, initially denying but ultimately admitting to the abuse. Crawford again attempted to minimize his own culpability, shifting blame to outside influences and claiming Abby "came on strong" to him. At the end of the interview, Crawford wrote an apology letter to Abby for his actions.

Crawford was indicted and tried for the previously stated offenses. At trial, the prosecution played the recording of the telephone call between Abby

and Crawford as well as the recorded police interview. Crawford testified in his own defense, denied the allegations against him, and attempted to explain away his recorded confessions. The jury deliberated less than fifteen minutes before returning a guilty verdict on both charges.

Before the jury returned for the sentencing phase, the trial court revoked Crawford's bond, telling him he was not free to leave the courtroom. A bailiff placed Crawford in handcuffs shortly before the jury entered the courtroom and the shackles remained in place throughout the sentencing phase. The jury again deliberated less than fifteen minutes before returning with a sentencing recommendation of thirty years on the sodomy charge and one year on the sexual abuse charge, with the terms to be served concurrently. The trial court subsequently entered its written judgment and sentence ordering Crawford to be imprisoned in accordance with the jury's recommendation. This appeal followed.

Crawford contends he was improperly shackled during the penalty phase of trial. He further asserts the trial court erred in admitting the recorded telephone call between himself and Abby which he maintains was largely unintelligible. No objections were raised related to either of these issues and Crawford concedes they are not preserved for appellate review. Nevertheless, Crawford requests palpable error review under RCr[5] 10.26. Under that rule, a palpable error occurs if a defendant's substantial rights are affected and

---

[5] Kentucky Rules of Criminal Procedure.

4

manifest injustice occurs. *Martin v. Commonwealth*, 207 S.W.3d 1 (Ky. 2006). Such injustice occurs only when the alleged error seriously affected the "fairness, integrity or public reputation of judicial proceedings." *Id.* at 4 (citation omitted); *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006).

> For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." A palpable error "must involve prejudice more egregious than that occurring in reversible error[.]" A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error. If not, the error cannot be palpable.

*Id.* (footnotes omitted). In *Martin* this Court strengthened *Brewer's* holding by declaring the probability "of a different result or error so fundamental as to threaten [an appellant's] entitlement to due process of law[]" must exist. *Martin*, 207 S.W.3d at 3. With these standards in mind, we turn to Crawford's allegations of error.

Crawford's first challenge centers on his being handcuffed in the presence of the jury during the penalty phase of trial. Our review of the record reveals no order by the trial court that he be shackled. In fact, absolutely no discussion related to the binding appears on the face of the record and we are provided no explanation for why the restraints were placed on him.

"Under the common law, shackling a defendant during trial, absent exceptional circumstances, was heavily disfavored." *Barbour v. Commonwealth*, 204 S.W.3d 606, 610 (Ky. 2006) (citing *Deck v. Missouri*, 544 U.S. 622, 626, 125 S.Ct. 2007, 2010, 161 L.Ed.2d 953 (2005)). In *Tunget v. Commonwealth*,

198 S.W.2d 785, 786 (Ky. 1946), our predecessor court condemned routine shackling of a defendant during trial, opining shackling should be reserved for only the most exceptional cases, cases in which the trial court has grounds to believe a defendant "might attempt to do violence or to escape during their trials." *Id.*

The concern expressed by the *Tunget* Court was later addressed in our Criminal Rules. RCr 8.28(5) states: "[e]xcept for good cause shown the judge shall not permit the defendant to be seen by the jury in shackles or other devices for physical restraint." This restriction applies to all jury-observed aspects of a criminal trial, not just the guilt phase. *Barbour*, 204 S.W.3d at 612. Trial courts are afforded great deference in deciding to keep a defendant shackled before the jury. *Id.* at 614. That discretion is not unfettered and a trial court's determination to shackle a defendant without "any substantive evidence or finding . . . that [a defendant] was either violent or a flight risk[]" constitutes an abuse of that discretion. *Id.*

As previously stated, nothing in the record indicates an order or direction to place Crawford in restraints. Clearly then, the determination was not based on any specific finding of extraordinary circumstances, as no finding of any kind was made. By failing to consider the individual circumstances of Crawford's case to determine if there were extraordinary circumstances which warranted shackling, the trial court unquestionably abused its discretion. However, our inquiry does not end with this determination.

Crawford suggests a manifest injustice occurred because he did not receive the minimum sentence. He contends the jury was influenced by the handcuffs to impose a harsher sentence than it otherwise would have. The Commonwealth counters Crawford's contention by noting he did not receive the maximum possible sentence which would have been life imprisonment. Further, the Commonwealth asserts the deviant nature of the crime, Crawford's confessions and "less-than-credible aggressive testimony," and the attempt to cast the six-year-old victim as wanting to be sodomized clearly weighed in jurors' minds, thus influencing the sentencing recommendation. The Commonwealth asserts any error in shackling Crawford was harmless. We agree.

Taking into account the strong evidence implicating Crawford's guilt including his own multiple confessions and the lack of a credible defense, we discern no palpable error resulting from his being handcuffed. There is little, if any, probability that without the presence of the restraints the outcome of the jury deliberations on sentencing would have been any different. Crawford offers nothing more than conjecture to support his position to the contrary. "Despite the substantial risk of prejudice that shackles pose, we are compelled to conclude that the error was harmless in this case due to the overwhelming evidence against [the defendant]." *Lakin v. Stine*, 431 F.3d 959, 966 (6th Cir. 2005). No manifest injustice resulted from the trial court's error, and Crawford is not entitled to relief. RCr 10.26.

7

Next, Crawford argues the trial court erred in permitting the Commonwealth to play and introduce the recorded telephone conversation between himself and Abby. He asserts the recording was largely unintelligible, untrustworthy, and insufficiently comprehensible for the jury to consider its contents. Thus, he contends it was palpable error to put the recording before the jury. However, as the Commonwealth points out, Crawford acquiesced in admitting the recording and cannot now be heard to complain.

When the Commonwealth sought to play the recording, Crawford specifically stated he had no objection. The record contains no mention by anyone that the recording was of inferior quality or that anyone had difficulty hearing or understanding its contents. Later, when the Commonwealth moved to introduce the recording into evidence, Crawford again stated he had no objection. Crawford's allegation of error was not simply unpreserved, it was invited.

"Generally, a party is estopped from asserting an invited error on appeal." *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 37 (Ky. 2011) (citing *Gray v. Commonwealth*, 203 S.W.3d 679 (Ky. 2006)). "A defendant cannot complain on appeal of alleged errors invited or induced by himself, particularly where . . . it is not clear that the defendant was prejudiced thereby." *Gray*, 203 S.W.3d at 686 (quoting *United States v. Lewis*, 524 F.2d 991, 992 (5th Cir. 1975), *cert. denied*, 425 U.S. 938, 96 S.Ct. 1673, 48 L.Ed.2d 180 (1976)). Invited errors amounting to waiver are those reflecting a party's knowing relinquishment of a right. *Quisenberry*, 336 S.W.3d at 38 (citing *United States*

8

*v. Perez*, 116 F.3d 840 (9th Cir. 1997)). The rationale behind this rule is to prevent a defendant from committing an act and later complaining on appeal the trial court erred to his detriment. *See Gray*, 203 S.W.3d at 686. Crawford is attempting to do just that.

Crawford's express representation to the trial court he had no objection to the playing and introduction of the recorded telephone conversation waived his right to claim on appeal the trial court erred in permitting same. Allowing Crawford's claim now would directly contradict the prohibition against appealing invited errors. Thus, he is not entitled to the relief he seeks. Nor would he be were we to consider his claim on the merits. We have reviewed the recording introduced into evidence and found it to be of reasonably good quality. We had little, if any, difficulty hearing and understanding what was being said, thus further undermining Crawford's allegation of error and confirming he was not prejudiced by its introduction.

For the foregoing reasons, we affirm the judgment and sentence of the Boone Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Karen Shuff Maurer
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Daniel Jay Cameron
Attorney General of Kentucky

Kenneth Wayne Riggs
Assistant Attorney General